UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11341-RWZ

LISA DELANEY

v.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, *et al.*

MEMORANDUM OF DECISION

June 4, 2014

ZOBEL, D.J.

Plaintiff Lisa Delaney, formerly a K-9 police officer with defendant Massachusetts Bay Transportation Authority ("MBTA")[1], sued the MBTA and two of its officers alleging that she was forced to resign as a K-9 officer after she reported wrongdoing by MBTA Sergeant Miguel Sosa.[2] In a prior memorandum of decision (Docket # 27), I dismissed all but two counts: (1) retaliation in violation of the Massachusetts whistleblower statute, Mass. Gen. L. ch. 149 § 185(b)(1)[3] (Count I); and (2) violation of plaintiff's federal constitutional rights, 42 U.S.C. § 1983 (Count III). Defendants move for summary judgment on these counts (Docket # 37), and for the following reasons, their motion is ALLOWED.

---

[1] Plaintiff misnamed the MBTA as "Massachusetts Bay Transit Authority" in the complaint.

[2] The parties have stipulated to the dismissal of Sosa from this action. See Docket # 26.

[3] I dismissed plaintiff's claim to the extent it relied on Mass. Gen. L. ch. 149 § 185(b)(3).

## I. Background[4]

My prior memorandum details the relevant facts, which I condense and repeat. Plaintiff informed defendant MBTA Deputy Chief Joseph O'Connor that Sosa had directed her to falsify her training records by reporting that she had attended class on three occasions when, in fact, Sosa had canceled class. The MBTA undertook an internal investigation, during which plaintiff provided investigators with proof of her allegations. Shortly thereafter, plaintiff was notified that all K-9 officers were to be reassigned to a 10:00 a.m. to 6:00 p.m. shift, instead of the 7:30 a.m. to 3:30 p.m. shift to which they were previously assigned. Working past 5:00 p.m. posed a problem for plaintiff because of her childcare responsibilities. Plaintiff repeatedly asked to schedule the one hour of each shift devoted to dog care at the end of her shift so she could leave at 5:00 p.m. Her superiors denied or ignored her requests. Plaintiff used accrued time off to work the new shift and continue to perform her childcare duties, but when her time off expired, she resigned as a K-9 officer. Unlike some other officers, plaintiff was not allowed to purchase Logan, her dog, from the K-9 unit upon her departure. Instead, defendants reassigned Logan to another officer.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[4] Defendants contend that plaintiff has failed to respond to their statement of undisputed material facts, and therefore, their version of the facts should be admitted. Defs.' Reply Br. in Supp., Docket # 48, at 1-2; see U.S. Dist. Ct. Rules D. Mass., Local Rule 56.1. I do not address this contention because it is not necessary to resolve the case.

law." Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248.

### III. Analysis

#### A. Count I: Retaliation

In Count I, plaintiff alleges defendant MBTA retaliated against her for providing information about Sosa's falsification of records. See First Am. Compl., Docket # 6, at ¶ 55. The Massachusetts whistleblower statute, on which plaintiff relies, forbids an employer from retaliating against an employee who

> [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment[.]

Mass. Gen. L. ch. 149 § 185(b)(1). Defendant MBTA argues it is entitled to summary judgment because plaintiff cannot show that (1) she provided the MBTA written notice of the alleged unlawful practice before filing suit; (2) she reasonably believed that the practice she reported broke the law, as opposed to an internal policy; and (3) the practice she reported caused an adverse action. Defs.' Mem. in Supp., Docket # 38, at 4. I need not address the second and third arguments because the first is dispositive.

Before disclosing an allegedly unlawful policy or practice to a "public body," an

employee must give her employer written notice of the practice and a reasonable opportunity to correct it. Mass. Gen. L. ch. 149 § 185(c)(1). The purpose of this requirement is "to give the employer unequivocal notice (*i.e.*, in writing) and an opportunity to clean up its own house before the matter [is] taken outside." Dirrane v. Brookline Police Dep't, 315 F.3d 65, 73 (1st Cir. 2002). A "public body" includes "any federal, state or local judiciary." Mass. Gen. L. ch. 149 § 185(a)(3)(B). Here, the relevant disclosure is the filing of the instant lawsuit.[5] Did plaintiff provide the MBTA written notice of Sosa's falsification of records before she filed this action? Plaintiff bluntly concedes that she did not. The following exchange occurred in her deposition:

> Q: Did you ever provide the MBTA with any kind of written notice of your training sheets complaint?
>
> A: No.

Deposition of Lisa A. Delaney, Docket # 39-1, at 197. Thus, by her own admission, plaintiff did not meet the statutory notice requirement. Defendant has established an affirmative defense and is entitled to summary judgment on Count I.

### B. Count III: Federal Constitutional Rights

In Count III, plaintiff contends that defendants O'Connor and Lenehan[6] violated

---

[5]Plaintiff's argument that disclosure of an unlawful practice to a supervisor does not trigger the notice requirement is of no moment. Dirrane makes clear that filing a lawsuit constitutes disclosure to a "public body" and requires prior written notice to the plaintiff's employer. 315 F.3d at 73; see Mailloux v. Town of Littleton, 473 F. Supp. 2d 177, 184-85 (D. Mass. 2007); Lamaica v. Town of Southbridge, No. 06-10366-FDS, 2006 WL 3487017, at *3 (D. Mass. Dec. 4, 2006); Wagner v. City of Holyoke, 241 F. Supp. 2d 78, 98 (D. Mass. 2003), aff'd 404 F.3d 504 (1st Cir. 2005) (per curiam).

[6]Robert Lenehan is Lieutenant Commander of the MBTA Transit Police Special Operations Section. First Am. Compl. ¶ 4.

her constitutional rights to free speech and equal protection[7] of the laws by retaliating against her for reporting Sosa's misconduct. See Compl. ¶¶ 64-65. Defendants move for summary judgment on three grounds: (1) plaintiff spoke pursuant to her official duties, and therefore, the First Amendment does not protect her communications; (2) plaintiff cannot demonstrate that her speech caused any adverse action; and (3) defendants are entitled to qualified immunity. Defs.' Mem. in Supp. at 15. Plaintiff failed to respond to the second and third grounds defendants advanced. Because defendants still bear the burden of establishing that summary judgment is warranted, however, I consider both grounds.[8]

### 1. Causal Connection

To succeed on her retaliation claim, plaintiff must show that her speech "was a 'substantial' or 'motivating' factor for the adverse action taken against [her]." Stella v. Kelley, 63 F.3d 71, 74-75 (1st Cir. 1995) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).[9] If plaintiff does so, defendant must show that it would have taken the adverse action anyway. Hartman v. Moore, 547 U.S. 250,

---

[7]Plaintiff does not explain the nature of the alleged equal protection violation, and in her memorandum in opposition to defendants' motion for summary judgment, she treats the right to free speech as her sole constitutional claim. Pl.'s Mem. in Opp. at 1, 20-21. Because she has not developed her equal protection argument, I deem it waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (stating arguments adverted to in a perfunctory manner without effort to develop them are waived).

[8]Plaintiff sued defendants in both their official and individual capacities. Qualified immunity is only a defense to personal liability. Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993). I do not consider defendants' argument that plaintiff spoke pursuant to her official duties rather than as a citizen.

[9]Plaintiff must also show that her speech was constitutionally protected. Stella, 63 F.3d at 74. I need not address that issue here.

260 (2006) ("If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm . . . ."); Baker v. Coxe, 230 F.3d 470, 476 (1st Cir. 2000).

The record shows that defendants had a legitimate, non-retaliatory reason for the shift change. In 2011, the MBTA faced a significant crime problem involving the theft of catalytic converters[10] from cars parked in commuter rail lots. Affidavit of Joseph O'Connor, Docket # 39-3, at ¶ 3. In response, the MBTA issued an "Incident Action Plan" ("IAP") entitled "K-9 Parking Lot Hi-Visibility Patrols." See Docket # 39-4. As the problem continued throughout 2011, O'Connor determined that a shift change would better align the K-9 officers' work hours with the time when thefts occurred. O'Connor Aff. ¶¶ 5-7. The shift change affected plaintiff and four other officers.[11] Delaney Dep. Exh. 9, Docket # 39-2.

Plaintiff contends that this unit-wide shift change was unconnected to the catalytic converter thefts and was instead retaliatory.[12] First, she claims that defendant MBTA never provided the K-9 officers with periodic reviews of the IAP's effectiveness, despite promises to do so. Mem. in Opp., Docket # 45, at 18. It is not altogether clear why this matters, and plaintiff does not persuasively connect it to alleged retaliation.

---

[10]A catalytic converter is a device that reduces pollution-causing emissions. Docket # 39-4. It contains expensive metals and can be sold for a high price at a scrap yard. Id.

[11]The personnel order in the record refers to six officers in the MBTA K-9 Unit. Delaney Dep. Exh. 9, Docket # 39-2. Therefore, the shift change affected all but one officer. Plaintiff stated in her deposition that two officers who worked an overnight shift were also unaffected by the shift change. Delaney Dep. at 82-83.

[12]Plaintiff makes these arguments with respect to Count I. I nevertheless consider them here.

6

Next, plaintiff states the shift change left a gap in parking lot surveillance from 6:30 a.m. to either 10:00 a.m. or 11:00 a.m., depending on the timing of the mandatory dog care hour. Id. The IAP states that all the thefts occurred between 5:30 a.m. and 7:20 p.m. Docket # 39-4. The fact that at least one theft occurred during the window of time in which the parking lots would be unpatrolled does not establish a fact issue on retaliation. At worst, this fact tends only to show that the MBTA's staffing decisions were unwise, which, absent more, does not create an issue of fact. Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11 (1st Cir. 2003). And of course, plaintiff's former shift, from 7:30 a.m. to 3:30 p.m., also left a window of unpatrolled time. Finally, plaintiff argues that defendants' refusal to schedule the dog care hour at the end of her shift represented an effort to force her out. Mem. in Opp. at 19. The record is to the contrary. An email from defendant Lenahan to patrol commanders stated that K-9 officers were to work from 11:00 a.m. to 6:00 p.m., implying that they would take the dog care hour at the beginning of their shifts. Delaney Dep. Exh. 12, Docket # 39-2. When plaintiff informed Lenahan that two officers were taking the hour at the end of their shifts, Lenahan immediately stopped that practice. Delaney Dep. at 100. There is no evidence that Lenahan knew of the practice before she informed him of it, or that it continued after he ordered it stopped. Id. at 121-22.

Nor does defendants' refusal to allow plaintiff to purchase Logan upon her resignation suggest a retaliatory motive. Plaintiff signed an agreement acknowledging that upon her departure from K-9 service, she would return her dog to the MBTA. Id. Exh. 33, Docket # 39-2. Defendants enforced this agreement. Plaintiff understood that

7

there was no guarantee she would be able to keep Logan, and the MBTA had sole discretion to make the decision. Delaney Dep. at 308-09. She cannot maintain a constitutional violation when defendants did something that she concedes they were authorized to do.

In her deposition, plaintiff stated that the proximity between the time she alerted the chain of command to the alleged training sheet deficiencies and the shift change is the most telling evidence of retaliation. Id. at 79-80. But "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" Wright v. CompUSA, Inc. 352 F.3d 472, 478 (1st Cir. 2003) (quoting Soileau v. Guilford of Me., Inc., 105 F.3d 12, 16 (1st Cir. 1997)). Just so here. The record simply does not demonstrate that plaintiff's speech, if protected, was the but-for cause of the shift change and Logan's reassignment. Because defendants have "proffered a satisfactory and unrebutted nonretaliatory reason for their actions," Count III fails. Baker, 230 F.3d at 476.

### 2. Qualified Immunity

For much the same reason, defendants are entitled to qualified immunity. "Government officials have qualified immunity from personal liability for actions taken while performing discretionary functions." Lynch v. City of Boston, 180 F.3d 1, 13 (1st Cir. 1999). I must ask "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 815-16

8

(2009)). The second prong has two parts: "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011). "A right is clearly established and immunity will not issue only if 'every reasonable official would have understood that what he is doing violates that right.'" Id. at 50-51 (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011)).

I proceed directly to the question whether the factual violation would be clear to a reasonable official. See Pearson, 555 U.S. at 226 (holding that a court may begin with either prong of the qualified immunity analysis). As noted above, the record shows that defendants had reasons unrelated to plaintiff's speech to take the actions she now challenges. See Philip v. Cronin, 537 F.3d 26, 34 (1st Cir. 2008) (emphasizing presence of reasons unrelated to speech and awarding qualified immunity); Wagner v. City of Holyoke, 404 F.3d 504, 509 (1st Cir. 2005) (per curiam); Dirrane, 315 F.3d at 71. A reasonable official could easily have concluded that the shift change and decision to keep Logan on active duty did not violate the Constitution. Qualified immunity protects defendants' reasonable judgments.

**IV. Conclusion**

Defendants' motion for summary judgment (Docket # 37) is ALLOWED. Judgment may be entered for defendants.

    June 4, 2014                                                                            /s/Rya W. Zobel

DATE                                             RYA W. ZOBEL
                                         UNITED STATES DISTRICT JUDGE